## Case No. 1,149.

### The BAY STATE.

[3 Blatchf. 48.][1]

Circuit Court, S. D. New York. Sept. Term, 1853.

COLLISION—VIOLATION OF HARBOR REGULATIONS—LIABILITY.

Where a steamboat was navigating the East river, opposite New York, not in the middle of the river, but near the piers built out from the shore next to the city, in violation of the state law of April 12th, 1848, entitled, "An act in relation to the navigation of the East river by steamboats," (Sess. Laws, 1848, c. 321,) and a collision ensued between her and another steamboat, which was in the proper track, and did every thing practicable to avoid the collision: *Held*, that the latter vessel was not liable for the damage caused to the former by the collision.

[Cited in The E. C. Scranton, Case No. 4,273. Approved in Lonan v. The C. H. Northram. Id. 8,473. Cited in The Amos C. Barstow, 50 Fed. 623.]

Appeal from the district court of the United States for the southern district of New York.

In admiralty. This was a libel in rem, filed in the district court, by the Norwich and New London Steamboat Company, owners of the steamboat Worcester, against the steamboat Bay State, to recover damages for a collision. In the district court, there was a decree for the libellants. The claimants appealed to this court. The facts are sufficiently stated in the opinion of the court.

John Leveridge, for libellants.

Daniel Lord, for claimant.

NELSON, Circuit Justice. The law of this state, passed April 12th, 1848, entitled, "An act in relation to the navigation of the East river by steamboats," requires steamboats navigating the East river to keep the middle of the river. This law is peremptory. The masters of vessels are bound to obey it, and have no discretion, except in cases of necessity. It is a mistake, on the part of those navigating vessels in this harbor, to suppose that they may indulge the exercise of their own judgment and discretion in regard to the proper mode of navigation. If they disregard the statute, they do so at their peril. In such cases, they are not only guilty of a crime, according to the statute, but they must take the hazard of the consequences to their

vessel, when so out of the proper track and on an illegal course. The Worcester was here clearly in fault. She was navigating the river, not in the middle, but near the piers built out from the shore next to the city. She was navigating, therefore, in violation of the law, and, as a consequence of this improper navigation, she encountered water craft, which led to the collision. She met a sloop near the docks, and a towboat coming out of a slip, and, to avoid these, she was obliged to slow and sheer towards the Bay State, which was on a line with her, or nearly so, out in the middle of the river. The Bay State was in her true track. There is a little margin in the testimony of the witnesses, but they have to estimate the distance by the eye, and they place her substantially in the middle of the river. Vessels must keep as near the middle of the river as can be ascertained by the exercise of sound judgment and observation on the part of the master at the time. This is the only means of determining at the moment. The Worcester, being on a course in violation of the law, and, as one of the consequences, meeting the sloop and the towboat, and being obliged to slow and back and sheer, and the Bay State being nearly on a line parallel with her, upon the outer circle, in the middle of the river, there was, as a matter of course, immediate danger of collision. All that the latter was bound to do was to exert her power and skill faithfully to rescue the Worcester from the impending peril into which she had thus wrongfully brought herself. This she did. She slowed and ported her helm as soon as she saw the sheer of the Worcester. I consider the testimony of the officers on board of a vessel to be the better evidence of the measures taken, or the manoeuvres made at the time, on board of their own vessel. It is idle to say that she could have stopped. This she could not do short of three times her length. All she could do was to slow and port her helm, and, in doing that, she did all that was practicable, in the emergency, to rescue the Worcester from the peril. This law as to the navigation of steamboats will be strictly enforced; and it is high time that the masters of vessels should learn that they must obey it or take the consequences. The fundamental difficulty in the libellants' case is, that the Worcester was out of the track prescribed by law. She was obliged to sheer, to avoid the sloop and the towboat that she met, and this led to the collision. The Bay State was bound only to do all she could, in the midst of the peril, to avoid it; and, having done that, she is free from blame. The decree of the court below must, therefore, be reversed, and the libel be dismissed with costs.

[NOTE. The libellants took an appeal to the supreme court but failed to prosecute it, and it was therefore dismissed. Norwich & New London Steamboat Co. v. The Bay State, 15 Lawy. Ed. U. S. Sup. Ct. R. 42.]

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]